UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| TOMAS ESTRADA SARABIA, | ) | |
|---|---|---|
| Petitioner, | ) | |
| | ) | Nos. 2:16-CV-86-RLJ; |
| v. | ) | 2:10-CR-110-RLJ-MCLC |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

Federal inmate Tomas Estrada Sarabia ("Petitioner") brings this pro se motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, challenging his convictions for cocaine conspiracy and firearms offenses, entered pursuant to guilty pleas [Doc. 1].[1] The United States has responded in opposition to the § 2255 motion [Doc. 3], and Petitioner has replied [Doc. 9].

The Court finds the materials thus submitted, together with the record of the underlying criminal case, conclusively show that Petitioner is not entitled to relief under § 2255. Accordingly, the Court will decide the motion to vacate without an evidentiary hearing. *Ewing v. United States*, 651 F. App'x 405, 409 (6th Cir. 2016) (explaining that an evidentiary hearing is unnecessary where allegations are "contradicted by the record, inherently incredible, or conclusions rather than statements of fact" (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)); *see*

---

[1] All docket references are to Case No. 2:16-CV-86, unless otherwise noted.

*also United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993). For the reasons which follow, the Court finds that Petitioner's § 2255 motion is without merit and it will be **DENIED** and **DISMISSED** with prejudice.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On October 14, 2010, a federal grand jury filed a 107-count indictment charging Petitioner and 35 co-defendants with various offenses [Doc. 3, Case No. 2:10-CR-110]. A superseding indictment was returned on January 11, 2011, adding 36 additional counts [Doc. 214, Case No. 2:10-CR-110]. Petitioner was charged in 35 of those counts with firearms-related offenses (5 counts) and drug-trafficking offenses (30 counts) [*Id.*, Case No. 2:10-CR-110]. At his arraignment, Petitioner established that he needed a Spanish interpreter [Doc. 4, Case No. 2:10-CR-110].

On August 3, 2011, Petitioner agreed to plead guilty to one count of conspiring to distribute and possess with the intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 (Count 1), and two counts of possession of a firearm in furtherance of drug trafficking crimes, in violation of 18 U.S.C.§ 924(c)(1)(A) (Counts 67 and 93) [Doc. 460 ¶ 1, Case No. 2:10-CR-110]. The remaining counts were to be dismissed [Doc. 460 ¶2, Case No. 2:10-CR-110].

At Petitioner's guilty plea hearing, a presentence investigation report ("PSR") was ordered and sentencing was set for January 10, 2012 [Doc. 473, Case No. 2:10-CR-110]. Sentencing was continued four times and, ultimately, was scheduled for November 27, 2012 [Docs. 683, 834, 994, 1057, Case 2:10-CR-110.].

In the PSR, the probation officer found that, for the cocaine conspiracy, Petitioner's base offense level was 34, pursuant to U.S.S.G. § 2D1.1(c)(3) [PSR ¶ 58], based on a stipulated quantity

for which Petitioner's was held accountable of at least 160 kilograms of marijuana and 45 kilograms of cocaine [PSR ¶ 58]. Those drug quantities converted to a marijuana equivalent of 9,160 kilograms [PSR ¶ 58]. Three levels were added, pursuant to U.S.S.G. § 3B1.1, for Petitioner's managerial or supervisory role in the conspiracy [PSR ¶ 61]. An additional two levels for Petitioner's use of a minor to participate in the conspiracy, U.S.S.G. § 3B1.4, led to an adjusted offense level of 39 (34 + 3 + 2 = 39) [PSR ¶¶ 62, 64]. Subtracting three levels for acceptance of responsibility resulted in a total offense level of 36, which, combined with Petitioner's criminal history category of III, resulted in an advisory guideline range on the conspiracy count of 235 to 293 months [PSR ¶¶ 56, 65, 80, 94-95].

The statutory mandatory consecutive 60-month sentence on the Petitioner's first conviction for possession of a firearm in furtherance of a drug trafficking crime (Count 67), added to the statutory mandatory consecutive 300-month sentence for the second such offense (Count 93), resulted in a net guideline sentence of 595 to 653 months (235 months + 60 months + 300 months = 595 months; 293 months + 60 months +300 months = 653 months) [PSR ¶¶ 94-95].

Petitioner objected to the two-level enhancement under U.S.S.G. § 3B1.4 (using a minor to participate in acts of conspiracy), but the objection was denied as moot [Doc. 1062 at 5 n.2 and 1064, Case No. 2:10-CR-110]. The Court varied downward on Count One and imposed the statutory mandatory minimum 480-month sentence (120 months on Count One, 60 months on Count 67, and 300 months on Count 93, all terms to be served consecutively), which was significantly below the effective guidelines range of 595-653 months [Doc. 1064, Case No. 10-CR-110]. The 480-month total sentence was the exact sentence requested by Petitioner in his Sentencing Memorandum [Doc. 1062, Case No. 2:10-CR-110] and was also the lowest possible

sentence he could have received, absent a government motion for a downward departure. *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (holding that district courts are constrained by mandatory minimums in the imposition of sentences). The remaining counts were dismissed on the government's motion [Doc. 1062, Case No. 2:10-CR-110].

Two notices of appeal were filed—the first one by counsel and the second by Petitioner acting pro se [Docs. 1067 and 1068, Case No. 2:10-CR-110]. The sole issue presented on direct appeal was whether this Court committed plain error in failing to establish a factual basis for Petitioner's pleas to the firearms counts, given his dispute with the factual basis as articulated by the prosecutor at the guilty plea hearing [Doc. 1153, Case No. 2:10-CR-110]. The Sixth Circuit found no merit to the claim and affirmed the judgment on January 13, 2015 [Doc. 1153, Case No. 2:10-CR-110]. Petitioner filed this timely § 2255 motion on April 13, 2016 [Doc. 1].

As a factual basis for his guilty pleas, Petitioner stipulated to the following facts:

From May of 2008 to the end of October 2010, Petitioner was the primary source and supplier of cocaine and marijuana involved in the conspiracy to distribute those drugs [Doc. 460 ¶ 4(b), Case. No. 2:10-CR-110]. Petitioner obtained kilograms of drugs (acquiring a kilogram of cocaine every two weeks), he personally sold cocaine, and he distributed the remaining cocaine to up to 50 other co-conspirators who then redistributed it [Doc. 460 ¶ 4(b) and (c), Case No. 2:10-CR-110]. The total drugs distributed during the conspiracy was at least fifteen but less than fifty kilograms of cocaine [Doc. 460 ¶ 4(a), Case No. 2:10-CR-110].

From November 2009 to July 2010, law enforcement officials arranged for confidential informants to participate in more than fifty controlled drug transactions, with eleven transactions occurring between the informant and Petitioner himself. The informants purchased over 500 grams of cocaine from Petitioner or individuals under his direction. During two recorded

transactions, the first on June 9, 2010, and the second on August 13, 2010, Petitioner displayed firearms to the informant.  During the first transaction, Petitioner displayed five firearms—one of which was a 9-millimeter pistol, a weapon Petitioner routinely carried.  The firearms displayed during the second recorded transaction were a loaded, semi-automatic pistol and a loaded revolver, and the transaction was also captured on video.  Authorized wiretapped telephone conversations between Petitioner and others confirmed that Petitioner was conspiring to distribute cocaine and marijuana.

On October 22, 2010, law enforcement officials executed thirteen search warrants on Petitioner's residence and other locations associated with the conspiracy, seizing a total of 3.5 kilograms of cocaine and 200 pounds of marijuana.  The search of Petitioner's residence uncovered fifteen baggies of cocaine (fourteen located in a cooler and one in Petitioner's bedroom) that together yielded .5 kilogram of cocaine; a .25 caliber pistol and over $7,500 in cash in Petitioner's bedroom; and a 9-millimeter pistol, ammunition, digital scales, and drug ledgers in a co-defendant's bedroom.

## II.  STANDARD OF REVIEW

This Court must vacate and set aside Petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . ." 28 U.S.C. § 2255. Under Rule 4 of the Rules Governing Section 2255 Proceedings, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief.  If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the §2255 motion

under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). In order to obtain relief under § 2255, a petitioner must clear a considerably higher hurdle than he would have to surmount on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041(6th Cir. 1978).

### III. DISCUSSION

Petitioner asserts three grounds for relief in his motion, all premised on claims of ineffective assistance of counsel. Petitioner claims that counsel coerced him to plead guilty [Doc. 1 at 4]. Petitioner next claims counsel "fail[ed] to advise [him of] the consequences of [his] plea agreement with an uncertified interpreter" [*Id.* at 5]. Petitioner maintains third that counsel failed to raise a claim under the authority of *Alleyne v. United States*, 570 U.S. 95 (2013).

6

### A. Governing Law

#### 1. Ineffective Assistance of Counsel

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). A court must presume that counsel's assistance was effective, and a petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (cautioning reviewing courts to "remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'") (quoting *Strickland*, 466 U.S. at 690); *see also Strickland*, 466 U.S. at 689 (directing that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, a petitioner must demonstrate prejudice, which in a guilty plea context requires him to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A court must be mindful that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Furthermore, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

### 2. Guilty Pleas

"A plea of guilty is more than a confession which admits that the accused did various facts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 237, 242 (1969). Because of the consequences stemming from a guilty plea, a plea-taking court must ascertain that the plea is voluntary and knowing and that it is being proffered with sufficient awareness of the relevant circumstances and the probable and direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, 748–49 (1979). In determining the validity of a guilty plea, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

Following the entry of an unconditional plea, a petitioner "may only attack the voluntary and intelligent character of the guilty plea" by showing that counsel's advice was outside "the range of competence demanded of attorneys in criminal cases." *Tollett v. Henderson*, 411 U.S. 258, 264, 267 (1973) (citation omitted). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* at 267. "The point of [*Tollett* and *Brady, inter alia*] is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case." *Menna v. New York*, 423 U.S. 61, 63 n.2 (1975).

**B. Claims 1 and 2: Counsel was Ineffective by Coercion/ Failure to Advice (sic) Consequences of Plea Agreement with Uncertified Interpreter**

The first two claims are intertwined and have been combined to streamline the Court's discussion. In both, Petitioner maintains that counsel used an uncertified interpreter who could not

translate properly the terms of his plea agreement from English to Spanish and then failed to establish on the record that Petitioner, who had a fifth-grade Mexican education, understood the terms of his plea agreement.

### 1. Petitioner's Allegations

More specifically, Petitioner asserts that counsel's use of an "unknown associate" who was in failing health and was not a certified interpreter to serve as an interpreter during their meetings, particularly the meeting where the plea agreement was discussed, amounted to a deficient performance [Doc. 1 at 15-16]. Petitioner makes no explicit claim of prejudice. The closest Petitioner comes to alleging prejudice is his contention that, had he not been advised by counsel "under duress to answer yes to Judge[,] . . . then he would have objected during the plea hearing and sentencing and would have gone trial of receving (sic) 'new' information of getting 25 years of mandatory minimum and the evidence presented in light of the video footage pursuant to Count (sic) 66 and 92"[2] [Doc. 1 at 22]. Actively interpreting Petitioner's nearly incomprehensible allegation, the Court understands that Petitioner is contending that he was prejudiced from counsel's conduct because, had he understood that his plea to Count 93 would entail a consecutive 25-year sentence, he would have rejected the plea and gone to trial.

Specifically, Petitioner's claims that counsel used an uncertified interpreter during the plea negotiations who lacked "knowledge to adequately translate proper Spanish" and "sufficient health" to translate the conversations between him and his counsel [Doc. 1 at 15]. Petitioner maintains that the interpreter also failed to ensure that he understood that the prosecution had to prove beyond a reasonable doubt the facts surrounding his crime and the elements thereto,

---

[2] Recall that Petitioner did not plead guilty to Counts 66 and 92, that these counts were dismissed upon the government's motion at sentencing, and that he pled guilty to Counts 67 and 93 (both for possession of a firearm in furtherance of a drug trafficking offense). Counts 66 and 92 were the predicate drug trafficking offenses for Counts 67 and 93, all of which were based on recorded transactions.

especially the elements of his firearms offenses [Doc. 1 at 15-16]. Petitioner argues that counsel knew that the interpreter's declining health—a fact of which Petitioner learned from counsel months after the signing of the plea agreement—made Petitioner "an easy target to manipulate" and caused him to be "easily influence[d] to sign a guilty plea with no proper translation as to what he [wa]s actually signing" [Doc. 1 at 16].

Petitioner also asserts that counsel chose to avoid a trial because Petitioner's lack of comprehension of the law would have posed an impediment at trial and that counsel chose instead to take advantage of Petitioner's legal naivete to manipulate him "to sign a guilty plea under coercion" [Doc. 1 at 19-20]. The first step in counsel's purported plan to coerce his client's guilty pleas was to use an unknown interpreter who failed to show Petitioner her credentials to establish that she was a credible and potential translator [Doc. 1 at 19]. Because of Petitioner's alleged lack of a prior criminal record, he trusted counsel and assumed that the interpreter was "adequate" and would "ensure all facts, evidence, and information were true and correct" [Doc. 1 at 20].

In an affidavit submitted in support of the § 2255 motion, Petitioner avers that the interpreter translated the plea agreement as containing an offer of a 14- to 44-year sentence, but went on to explain that Petitioner could only be given 22 years' imprisonment because he had no prior criminal record [Doc. 1 at 83]. Petitioner further states that when counsel ultimately told Petitioner that he would be receiving an enhanced sentence, Petitioner responded that he thought his sentence would be 14 to 44 years, but that he really would face only "22 years due to not having a prior criminal history" [Doc. 1 at 84]. Counsel purportedly replied to Petitioner's remark by telling him that "that was never offered" [Doc. 1 at 84]. Petitioner avers that when he "learned of

the misadvise (sic)," he told counsel that he wanted to stand trial but that counsel dismissed his desire to go to trial and assured Petitioner that he would be sentenced fairly [Doc. 1 at 84].[3]

Petitioner also contends, in a letter to the Court, that counsel pressured him to plead guilty and used "scare tactic" by telling Petitioner that he was facing life imprisonment and that his family would also be arrested and brought into custody and by warning him not to mention these things "specially to the Judge" [Doc. 1 at 142]. Petitioner thus concludes that his guilty pleas are invalid due to counsel's ineffective assistance [Doc. 1 at 16].

**2.     Analysis**

From Petitioner's allegations involving the "[s]o called Spanish Interpreter" hired by counsel [Doc. 1 at 15], the Court discerns that Petitioner is challenging only the translation provided him by the interpreter whom counsel brought with him to meetings, and not the interpreter(s) hired by the Court for Petitioner's in-court proceedings. Therefore, the claims will be analyzed under constitutional principles, rather than the guidelines set out in the Court Interpreter's Act, 28 U.S.C. § 1827—a statute designed to enable a non-English speaking defendant to comprehend the proceedings in the courtroom and to communicate effectively with his attorney. *United States v. Sanchez*, 928 F.2d 1450, 1455 (6th Cir. 1991), *abrogated on other grounds by United States v. Jackson-Randolph*, 282 F.3d 369 (6th Cir. 2002). Notably, the statute

---

[3] The logical implication of Petitioner's statement that he told counsel he wanted to go to trial is that this statement was made prior to his guilty plea hearing, where he waived his right to a jury trial. If the Court has drawn the correct inference, this means that Petitioner entered guilty pleas pursuant to a plea agreement that he knew did not provide for either 14 to 44 years' imprisonment or 22 years' imprisonment, as the out-of-court interpreter purportedly told him. Moreover, even absent this inference, the interpreter hired by the Court for in-court proceedings interpreted at the plea-taking hearing, wherein the prosecutor explained that "[w]ith regard to count 93 the [Petitioner] would be subject to a term of imprisonment of a minimum mandatory 25 years" [Doc. 1120 at 17, Case. No. 2:10-CR-110]. As discussed later in this opinion, Petitioner has not alleged any inaccuracies in the interpretation provided at that plea hearing.

"does not create new constitutional rights for defendants or expand existing constitutional safeguards." *United States v. Joshi*, 896 F.2d 1303, 1309 (11th Cir. 1990).

At the outset, the Supreme Court has never held that the Constitution requires an interpreter for a non-English speaking criminal accused. *United States v. Johnson*, 248 F.3d 655, 663 (7th Cir. 2001) (observing that the Supreme Court "has yet to recognize the right to a court-appointed interpreter as a constitutional one"); *Rodriguez v. Warden*, No. 16-2419, 2017 WL 4677203, at *3 (6th Cir. July 3, 2017) (same) (citing *Nguyen v. Booker*, 496 F. App'x 502, 506 (6th Cir. 2012), and *Johnson*, 248 F.3d at 663). Nor does the Constitution mandate that an interpreter be certified. *United States v. Silva-Arzeta*, 602 F.3d 1208, 1217 (10th Cir. 2010) (agreeing that the use of certified interpreters during interrogation "could improve the accuracy of evidence at trial" but declining to "hold that their use is constitutionally required").

However, the Sixth Amendment guarantees a defendant the right to counsel which necessarily implies "the right to the effective assistance of counsel." *Strickland*, 466 U.S. at 685-86 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). Petitioner can prevail on his claim of ineffective assistance with regard to the use of an uncertified interpreter to translate the plea agreement if he shows that counsel's performance was unreasonable under prevailing professional norms and that, but for counsel's deficient performance, Petitioner would have rejected the plea bargain and would have insisted on standing trial. Petitioner has not made that showing.

Many of Petitioner's arguments are difficult to follow, speculative, illogical (if not impenetrable), or disproven by the record. For example, Petitioner maintains that, months after he entered his pleas, he learned from counsel that the defense's interpreter was in ill health. Based on this single snippet of information, Petitioner concludes that counsel used an interpreter who

12

was unwell to make it easier to manipulate and influence him to sign an improperly-translated plea agreement.

First, there is nothing to suggest that the interpreter secured by counsel had an illness at the time she translated Petitioner's plea agreement. The timing of any alleged error on the part of counsel is important because courts must assess the "reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. Second, Petitioner has not explained what role the unidentified illness allegedly suffered by defense's interpreter played in the translation of the plea agreement into Spanish. Nor has Petitioner revealed how the *interpreter*'s purported illness caused *Petitioner* to become "an easy target to manipulate." The Court is unable to find a thread of logic in this argument.

Petitioner's claim of coercion that rests on the suggestion that he was more susceptible to coercion because he was ignorant of the law due to his lack of a criminal history [Doc. 1 at 20] has no evidentiary basis. While Petitioner's criminal history was not extensive, the PSR reveals that he had a criminal history category of III [PSR ¶¶ 72-27, 80]. This claim of coercion is based on the demonstrably false premise that Petitioner lacked a criminal history. Therefore, it lacks merit.

The next claim of coercion is bottomed on Petitioner's allegation that counsel told the interpreter to stop writing notes and that counsel refused to submit for Petitioner's records a copy of the written notes that the interpreter promised to provide him [Doc. 1 at 86]. Petitioner does not indicate how counsel's claimed actions constitute a deficient performance or how those actions prejudiced his defense.

Counsel's conduct is strongly presumed to be within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. It is Petitioner's burden to prove his claims and, suffice it to say, that he has provided nothing upon which to find any deficient performance

on counsel's part by instructing the interpreter not to take notes. *See e.g., United States v. Valdivia*, 60 F.3d 594, 595 (9th Cir. 1995) (finding that counsel's use of defendant's daughter as interpreter fell "within the counsel's range of professionally competent assistance" since "there is no requirement that an attorney hire an impartial translator for client meetings").

As another instance of coercive conduct, Petitioner maintains that counsel pressured him to plead guilty by advising him that he was facing life imprisonment and that his family would also be arrested and brought into custody. If the alleged advice concerning a possible life sentence was given by counsel prior to Petitioner's decision to plead guilty, the offenses to which he entered guilty pleas indeed carried sentences, according to the written plea agreement, of "up to life" on the cocaine conspiracy or "not more than life" for the offenses of possession of a firearm in furtherance of a drug trafficking crime [Doc. 460 ¶¶ 1(a)-(c)].

The Court finds that "correctly informing a defendant that he may face a greater sentence after conviction at trial is not coercion, and in fact, failure to do so may qualify as ineffective assistance of counsel." *United States v. Taylor*, 254 F. Supp. 3d 145, 159 (D.D.C. 2017), *app. dismissed*, No. 17-3055, 2018 WL 4099683 (D.C. Cir. July 23, 2018).

The claimed pressure involving the threat of an arrest of Petitioner's family is not accompanied with the necessary factual development. For example, Petitioner does not identify the family member who was to be arrested and detained or whether that family member was also alleged to have played a role in the drug trafficking conspiracy.

A threat to arrest a family member is not coercive if the threat could have been executed lawfully, as would be the case if a family member participated in a drug conspiracy in violation of federal drug laws. *See, e.g., United States v. Johnson*, 351 F.3d 254, 263 (6th Cir. 2003) (police threat to arrest defendant's girlfriend is not coercive and does not render confession involuntary

14

where facts are sufficient to create probable cause to arrest her). As it is, a conclusory claim, as is this one, fails to state a claim for collateral relief. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991) (observing that bare, conclusory allegations, unsupported by facts, cannot establish a constitutional violation); *Loum*, 262 F.2d at 867 (explaining that a motion that lacks substantiating factual contentions lacks merit).

Petitioner's claim that counsel failed to advise him of the consequences of his plea agreement with an uncertified interpreter centers on the consecutive 300-month sentence Petitioner received for his second § 924(c) conviction for possession of a firearm in furtherance of a drug trafficking offense as charged in Count 93. Petitioner essentially is alleging that he did not understand that he could be sentenced to a consecutive 25 years' imprisonment for his second § 924(c) offense. Again, the record refutes Petitioner's claim that he was not advised of the consequences of his plea to the § 924(c) offenses.

During his guilty plea hearing, Petitioner assured the Court, under oath, that counsel explained the terms of plea agreement to him, that counsel advised him as to every element of the charged offenses, that he understood the facts upon which his pleas were based and to which he admitted in the plea agreement, that he understood to what he was pleading guilty, that he understood all the rights he was giving up by pleading guilty, that he was offering to plead guilty because he in fact was guilty, and that no person had pressured him mentally or physically to force him to plead guilty [Doc. 1129, Case No. 2:10-CR-110]. Indeed, during the Court's inquiry into whether Petitioner had been pressured to plead guilty, Petitioner stated, unprompted, that "[t]his is voluntary" [Doc. 1129 at 8, Case No. 2:10-CR-110]. It should be noted that during the guilty plea hearing, Petitioner had the services of interpreters hired by the Court whom he has never claimed were not qualified or did not perform adequate interpretation of those proceedings.

15

The plea hearing transcript reflects that, after the government's attorney summarized the factual basis underlying the pleas, Petitioner stated that he did not agree "with the part about the weapons, not all the way because it's not exactly the way he said it was. But it doesn't matter, I'll take responsibility" [Doc. 1129 at 1, Case No. 2:10-CR-110]. Petitioner's disagreement with one part of the factual recitation suggests that he had sufficient understanding of the entirety of the government's summary of what he had done to express disagreement as to one specific part of it.

Too, the character of the objection shows that any alleged disagreement with the factual basis stated by the government's attorney did not stem from a translational inaccuracy, but from the facts iterated to support Petitioner's firearms offenses. And even that discrete factual disagreement did not stop Petitioner from pleading guilty because, as the Sixth Circuit noted in his direct appeal, Petitioner stated that "it didn't matter and he would take responsibility" and that "he was pleading guilty because he was in fact guilty of the charges" [Doc. 1153 at 3, Case No. 2:10-CR-110]. The transcript of Petitioner's guilty plea hearing affirms that he understood to what he was pleading guilty and that he was offering to plead guilty because he in fact was guilty [Doc. 1129 at 15, Case No. 2:10-CR-110].

Further, Petitioner specifically was told during the plea hearing that, with respect to Count 93, i.e., the second § 924(c) offense, he was subject to a minimum mandatory 25 years' imprisonment up to life to be served consecutively to the sentences for the other two counts [Doc. 1129 at 19, Case No. 2:10-CR-110]. Petitioner, when asked if he still wished to plead guilty knowing all the penalties to be imposed pursuant to his guilty pleas, answered in the affirmative [Doc. 1129 at 20, Case No. 2:10-CR-110]. The Court then determined that Petitioner understood the nature of the charges to which the plea was offered, the maximum and minimum penalties

16

provided by law for the offenses, and the plea agreement made on his behalf [Doc. 1129 at 20, Case No. 2:10-CR-110].

"When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea." *Thompson v. United States*, 728 F. App'x 527, 535 (6th Cir. 2018) (quoting *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017))). As the Supreme Court has stated:

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

So it is here. Indeed, at the guilty plea hearing, counsel stated that, "[f]or the record I represent to the Court that the entire Plea-Agreement has been read to Mr. Estrada, word for word, including the factual bases by a qualified interpreter" and that Petitioner had agreed to all the facts [Doc. 1129 at 10, Case No. 2:10-CR-110]. Nothing in the record indicates Petitioner ever told counsel that he was having difficulty understanding the out-of-court interpreter's Spanish or her explanation of the plea. The Court shares in the sentiments expressed by the Eleventh Circuit, which the Court has paraphrased: "It would be an open invitation to abuse to allow an accused to remain silent throughout the [plea proceedings] and then, upon being [adjudged] guilty [and sentenced], assert a claim of inadequate translation." *United States v Joshi*, 896 F2d 1303, 11th Cir. 1990).

17

The Court finds no deficiency in counsel's representation regarding the plea agreement, his alleged coercive conduct to induce guilty pleas, or his securing an uncertified interpreter to attend his meetings with his client and to interpret the plea agreement. The Court further finds that Petitioner has not shown that, but for counsel's use of an uncertified interpreter during meetings involving plea negotiations, particularly when counsel discussed, via the interpreter, the proposed plea agreement, Petitioner would not have pled guilty to three counts, but would have insisted on going to trial on all thirty-five counts charged in the superseding indictment (and faced two additional §924(c) charges of possession of a firearm in furtherance of a drug trafficking offense).

The first two claims of ineffective assistance are without merit and do not warrant § 2255 relief.

C.  **Claim 3: Counsel was Ineffective for Failing to Raise an *Alleyne* Claim**

Citing *Alleyne v. United States*, 133 S. Ct. 2151 (2013), Petitioner argues that his attorney was ineffective for failing to insist that a jury decide all facts which the Court relied upon to sentence him to the five-year and twenty-five-year consecutive sentences for his two § 924(c) convictions for possession of a firearm in furtherance of a drug-trafficking offense. Petitioner misreads *Alleyne*. *Alleyne* only proscribes judicial findings of facts (other than the fact of a prior conviction) which increase the statutory penalty for an offense.

The statutory penalty for Petitioner's first § 924(c) offense was a mandatory minimum of five years and for the second § 924(c) offense a mandatory minimum of twenty-five years—both consecutive to each other and to the drug conspiracy sentence, 18 U.S.C. § 924(c)(1)(A)(i) and § 924(c)(1)(C)(i). Petitioner's sentence for the drug conspiracy was a mandatory minimum ten-year's imprisonment. No fact found by this Court increased his statutory penalties for those three offenses. Indeed, the penalties for these offenses were set forth in Petitioner's negotiated plea

18

agreement and urged upon the Court in his Sentencing Memorandum. Petitioner received the penalties he acknowledged he would receive in his bargained-for plea agreement.

Petitioner's attorney's performance was not deficient for his failure to make a pointless request and appellate counsel's performance likewise was not deficient for failing to raise a meritless issue on direct review. *See Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) (no constitutional deficiency in failing to raise meritless issues). Nor does prejudice ensue from a failure to present a groundless claim. *See, e.g., Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (explaining that counsel cannot be held constitutionally ineffective for failing to pursue a meritless claim); *United States v. Fry*, 831 F.2d 664, 669 (6th Cir. 1987) (failure to raise a meritless objection at sentencing not ineffective assistance).

Furthermore, if the claim had merit, counsel's failure to raise an *Alleyne* claim must be judged at the time of counsel's alleged error. *Strickland*, 466 U.S. at 690 (instructing that the reasonableness of counsel's challenged conduct is to be evaluated based "on the facts of the particular case, viewed as of the time of counsel's conduct"). Here, Petitioner was sentenced in November of 2012, and *Alleyne* was not decided until June 17, 2013. Trial counsel was not ineffective for lacking the prescience to foresee the later-issued *Alleyne* ruling. *See Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986) (observing that counsel's "failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel").

## IV. CONCLUSION

For the reasons discussed in this Memorandum Opinion, Petitioner's § 2255 motion to vacate, set aside or correct sentence [Doc. 1] will be **DENIED** and **DISMISSED.**

Finally, under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a

"substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).

A certificate of appealability should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484.

Having examined each of Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find the dismissal of such claims to be debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge